Welcome to the United States Fifth Circuit Court of Appeal. We have several cases to be argued this morning. We'll call the first case, which is United States of America v. Eduardo Najera. I'll hear first from Mr. Bogan. May it please the Court, Brad Bogan for Eduardo Najera. I'd like to start by mentioning the 28-J letter that I filed last week that concerns the harm analysis in this case. In our briefs and in the government's brief, we said that Najera would have to prevail on both of the guidelines issues that were raised in order to obtain any relief, because if he were rolling in his challenge for acceptance, the offense level would remain the same for the evidence to challenge the reckless endangerment answer, and that was incorrect. It was based on his reading of the guideline and misunderstanding of the order in which it was— Can you speak up? There's a big crowd. Oh, sure. I think we understand that, and I did want to say I was very appreciative not just of you correcting the error in the brief, because that is a point I'd stumbled over, but also the government agreeing with the correction, both the coordination and the acknowledgement and the government not pressing the point was very helpful to me. So I'll turn to the first issue, the denial of the acceptance of responsibility, and it was error for the district court to do that. The district court did so because it believed that Najera had challenged facts in the hearing on the motion to suppress, and that isn't actually the case. At the hearing, Najera's counsel did cross-examine the sole agent who testified and asked the agent about some of the circumstances surrounding the stop, asked the agent if some of the matters that he testified to at the suppression hearing were mentioned in a report that he'd prepared, but Najera did not present any evidence of his own. He did not call any witnesses. He also did not object to the exhibits that the government offered at the hearing, and in his post-hearing argument and then in the brief that he submitted after the hearing, he didn't challenge any of the facts as presented by the government. Instead, his argument was just that the facts did not establish a reasonable suspicion for the stop. And so Najera, of course, wanted to preserve his ability to challenge the denial of the motion, and for whatever reason the government would not agree to a conditional plea. So he proceeded to a bench trial, and the court would not simply accept the evidence that had been presented at the suppression hearing and would not view the video deposition that one of the interior witnesses would have provided. Instead, the court required that deposition be played at the bench trial. So Najera did not actually stipulate anything at the bench trial, but he also did not contest any of the evidence. So then the case proceeds to sentencing. The pre-sentence report recommended no acceptance of responsibility by virtue of the fact that by filing the motion to suppress, Najera had challenged the facts of the case. Well, okay, so the situation is we've got a defendant who has been charged with illegally transporting aliens, and he decides to put the government to its proof, correct? In other words, he doesn't – he offers to plead guilty. The government doesn't accept the conditional plea, and then he does as little as possible to contest the evidence against him. Yes, but that isn't the same as putting the government to its proof in a contested trial, and I don't think that's what the acceptance of responsibility guideline is contemplating. But in the filing he made for the motion to suppress, it says, I don't concede the facts of the government's case. Is that correct? Well, and at that time there was no evidence. There was just whatever discovery Najera had received from the government, and I can say that oftentimes the testimony in a suppression hearing diverges from what was in an agent's report because oftentimes the agents who actually make an arrest or do the search are not the same agents who end up writing a report, and so there's sometimes some inconsistencies. It's clear that under the guidelines in order for him to get a break in his sentence for acceptance of a responsibility that he has to acknowledge I am guilty of the crime with which I am charged. Otherwise he can't accept responsibility, right? Well, and Najera did so. Did he ever say that? Did he ever say I admit that the evidence that the government has and that I committed the crime? You cannot accept responsibility for having committed a crime that you do not acknowledge, can you? Well, I would say no. Okay. And so what evidence do you have here that the district court abused its discretion in concluding that he had not accepted responsibility when he did not make that concession? Well, the court did not deny acceptance on that basis. The court did not find that he had failed to do that. But I'm asking you. I'm asking you the question. Well, at the sentencing hearing itself, Najera spoke, and he said – he actually said very little. He just – well, your best evidence is the PSR says he said I'm really remorseful. Yes. The trouble is the law is – I think the law – hasn't the law put you in a difficult position because Washington, which is your best case, I think. Yes. But Mr. Washington confessed. He made a written confession. It seems like that's what the law virtually requires now. Put aside the world of stipulations, which is a little confusing. But if the defendant says here's a written confession, then I get the acceptance of responsibility. Or – But the problem I think for you now is our law would also say once they do that, any error in terms of suppression is moot because the government could always use your confession against you even if we were to reverse because of the suppression having error. Yes. So you're caught. Yes, that's exactly right. Rule 11 has not always allowed conditional pleas. And prior to 1983 when that was introduced into the rule, this court had approved this stipulated bench trial process as a vehicle for preserving the ability to appeal an adverse ruling on pretrial motion. And so that case law still exists in the circuit, but there's also the conditional plea avenue. But then there is the Garcia-Ruiz case, which says that by stipulating to the evidence that you sought to suppress, that has either weighed the issue or it has rendered any error harmless. And there's also an unpublished decision that Garcia-Ruiz mentions that says that moots the issue. And so, yes, a defendant in this situation is in a bind, particularly when the government does not agree to a conditional plea. And you can contrast that with another one of these cases that's mentioned in the briefs, Cordero. That was a defendant who was charged with being a felon in possession. He filed a motion to suppress, challenging the validity of the warrant. He lost. And then the government offered him a plea agreement, which would include a conditional plea. He turned it down. He went to a bench trial. He didn't stipulate to anything. He didn't even stipulate to the interstate commerce element until the government brought its witness forward and the court asked, well, is that going to be an issue in the case? And so in Cordero, he lost acceptance, and the court pointed out the government offered him a conditional plea agreement and also said even if he didn't even have to accept the agreement, he could have just pleaded guilty conditionally under Rule 11. Nehera couldn't do that because the government refused. And I don't know that we would be here if he had done a conditional plea. Does the record reflect that he requested the conditional plea? Yes. At the bench trial, the court was kind of taken aback as to why they were even doing this in the first place and wondered why it is that the government wouldn't agree to the conditional plea, and the party said it. We offered a plea guilty conditionally, and the government said we didn't agree. And the issue of stipulations just never comes up, so we don't know whether he refused to stipulate or it was the government refused to accept a stipulation. Well, the – what happened on that point is – okay. They discussed this matter of – they discussed stipulating, and then it turned to this discussion of why the government would not agree to a conditional plea. So it's just inconclusive on – okay. Well, and I can tell you that the hesitancy on Nehera's part to stipulate was because of this suggestion in Garcia-Ruiz that by doing so, he would end up waiving or rendering harmless any error. What are other circuits doing to get clients – I mean the guideline commentary is explicit that you can go to trial and still get acceptance responsibility, and it looks like it's a fact-law distinction. But are any other – you must have researched – are there other circuits that have tried to work out of this box that makes it impossible for a defendant to get the guideline? I looked at some other circuits. I didn't do a comprehensive search for their approaches, and I didn't find anything in the cases that I looked at that involved this particular situation and this sort of catch-22 when the government won't agree to a conditional plea, and yet the government – the defendant is offering to and wants to do it solely. It goes to trial solely for the purpose of preserving the challenge. Now, as to this fact-law distinction, the acceptance of responsibility guideline talks about contesting factual guilt, and to the extent that there was any factual dispute regarding the suppression issue in this case, and I don't think there was, that did not go to his factual guilt of transporting aliens and conspiring to transport aliens. At the hearing, the defense counsel cross-examined the agent on whether the agent turned his lights on before he stopped the Mahara, questioned the agent about how long it took for Mahara to stop after the agent had done that, whether it was safe to do so, and things like that. But the – whether there's reasonable suspicion to stop a car happens to sort of blur into the crime in this case because he's transporting aliens. And so if he's evasive at all, that's part of the transportation offense. So once he says to the agent that's following him, if there's any cross-examination to impeach him as to his credibility as to whether he was evasive or speeding, it would seem to me that may be a case where it is contesting the facts of his transportation offense. Well, I don't read the suppression hearing transcript that way. In terms of challenging the agent on his credibility as to how long Mahara took to stop, it was more a matter of just exploring the agent's memory. And to the extent that the length of time it took Mahara to stop is relevant to the reasonable suspicion question, there was no – we didn't contest that point. So ultimately it was just a legal issue. Given these facts, as the agent has testified to in the exhibits that the government presented, does that amount to a reasonable suspicion for the stop? And our argument was no. And just turning briefly to the second issue on the reckless endangerment enhancement, it was also an error for the district court to impose that. The basis for it was that the alien who was detained as a material witness and who testified in a video deposition said that when the guide in Mexico brought him and the others across the Rio Grande, they almost drowned. But that does not in and of itself mean that the guide was engaging in reckless conduct. The Rio Grande is varied. There are parts of it that are shallow, you can easily wade across and narrow. There are parts that are deeper and perhaps more treacherous. But as soon as the guide realized there was a problem, the guide went back, called somebody else who was organizing the whole operation in Mexico, and went to a different spot on the river where they could cross safely. So there's also cases that talk about, for example, aliens who are walking and hiking through south Texas after they've crossed the river en route to wherever it is they're going or to be picked up. And the court has said simply because south Texas can be an unforgiving environment, that in and of itself is not enough to constitute reckless conduct. There has to be something more, like, for example, trying to walk through the brush country in the heat of the summer without adequate food and water. Do you know of any case where the illegal smuggling has involved putting aliens into the Rio Grande and they haven't gotten the reckless enhancement? I don't know. Wouldn't it? There could be, for example, if a guide was trying to lead people across a particularly wide and deep portion of the river that the guide knows is wide and deep and has the alien in an inadequate inner tube or like a child's flotation toy and says, okay, float across that way. That could probably be reckless endangerment. But there was testimony here that the sentencing court credited that one of them said almost drowned. And that's all there is. You testified to that. How did that get into the record? That came from the alien who was detained as a material witness, and that's what he said during his video deposition. And he just said some of us almost drowned? Is that what he said exactly? Yes. But he didn't say how? Whether they turned back or whether they actually crossed the river itself? After that, the guide who was leading them across called the man in Mexico who was apparently the organizer of the operation, and after that went to a different spot in the river where they were able to cross easily. So the guide perceived the problem that the aliens were having, pulled back, and took them somewhere else where it would be safe to cross. Are you suggesting that no alien ever was in danger of drowning in the Rio Grande, that they pulled them back before once they discovered that it was too deep to walk across? Well, that could be, but that doesn't necessarily mean that it was reckless for the guide to try to cross the aliens at that point in the first place. My questions are kind of friendly to you, actually, in the sense that I'm suggesting that there's nothing in the record that indicates that any alien was forced to go across the deep water, but I don't know that. That's what I'm asking you. To the best of my recollection, no. There's just the statement that we almost drowned. And when they realized it was deep, they turned back and found a new route? Yes. Then that would not be reckless if that were the facts, it seems to me. Under the circumstances, it would not be reckless. Yes, I would agree. In order for it to be reckless, it would have to be awareness of and conscious disregard of a substantial and unjustifiable risk. And if the guide had known that they were almost going to drown, I can't imagine that the guide would have tried to bring them there in the first place. And once he did perceive that risk, he took steps to ameliorate it. Thank you. Good morning. May it please the Court. Joseph Gay on behalf of the United States. I'd like to begin by addressing the acceptance of responsibility issue in this case. So the record reflects that the government in this case did not provide for a conditional plea. I would like to state that our AUSA who handled that hearing made some statements that there was some sort of blanket policy that the Western District of Texas doesn't do conditional pleas. That was simply inaccurate. We do conditional pleas on a case-by-case basis, as the rule allows. And in this case, our then criminal chief made the decision that in this case a conditional plea would not be warranted. What was his basis for that? I'm not sure, Your Honor. And the rule provides that that is uniquely within the government's power to decide. So they're permitted to make an arbitrary decision? The exercise of discretion in this case, the facts are made on a case-by-case basis, and in this case it was deemed. And you said there are no guidelines for that decision and no expression of the reasons for making the decision as to whether he can make a conditional plea. That sounds like it is subject to very arbitrary decisions. The exercise of discretion is uniquely vested with the government by the rule, and in this case the decision was made not to do a conditional plea. Anecdotally, I would point out that, and you can read the sentencing transcript, that Mr. Nahara has quite a history of alien smuggling and activities. And I wasn't part of the process where that decision was made, but I'm assuming that a fact-driven analysis was done, and in this case the decision was made that no conditional plea would be offered. That doesn't mean, though, that the defendant doesn't have options to preserve. But the government doesn't have to explain why it refuses a conditional plea, and the government never has to agree to a stipulation, and neither of those decisions are reviewable. So what's the solution to the legal predicament? The guidelines are clear that a defendant can preserve a legal – a challenge to the legal correctness of the suppression ruling and go to trial and still get accepted responsibility. So how would you get us out of the box where they don't have that option? Because if they want to just confess where they don't even need your stipulation, like Washington did, they're actually going to lose their right to litigate the underlying suppression measure. Well, I would start off by saying I'm not sure that the law in this circuit is clear that that would in fact happen. I'm not so convinced that by stipulating to the evidence at a bitch trial that you would necessarily be precluded or have been found to have waived your right to contest your motion to suppress. Well, they can't stipulate unless the government agrees, and you're not suggesting this record implies anywhere the government would have agreed to a stipulation. There's nothing in it that says the government, hey, we'll stipulate. You have to have two people to stipulate. At the bitch trial? Yeah. Actually, it's interesting, and I have the transcript, and it starts off with the discussion really centered around, I guess, discussions between Mr. Nahara and his trial team and the appellate section. And it starts off with the government basically saying, Judge, it appears this isn't going to be a stipulated bench trial. And the judge says, You're right. This isn't stipulated at all. And that's at page 250 of the record. And as you can see, if you read that transcript, the government – I thought the AUSA was actually telling the judge there are no fact disputes here. That's right. Okay, but once the government says that, then doesn't that decide the issue that he isn't contesting his facts, and therefore he gets the two points? Actually, though, the defendant refused to stipulate to the evidence as to his guilt or innocence and required the district court to put on evidence because we had the suppression transcript, which was offered into evidence. But it only focused on some aspects of the criminal case. And then the deposition from the alien was played during the suppression – excuse me, during the stipulated bench trial. And based on the combination of those two things, the judge found that there was evidence beyond a reasonable doubt. But it is clear from the record that the defendant never stipulated to the evidence. Okay, well, we'll look at the record. I don't remember him saying, I refuse to stipulate. I remember the government just sort of saying, hey, judge, don't worry. We're just trying to get this – the suppression issue to the appellate court. We weren't allowed by our – by the government to agree to a conditional plea, so here we are. They don't do an opening argument. They don't do a closing argument. They presented no evidence, and the government's closing argument is three sentences long. It looks like everyone is just agreeing we're going to get through this because the government wouldn't allow a conditional plea. But then I would think the guidelines would say he has to be able to get his acceptance. No? I'd like to – so at page 246, it starts off, Judge, while this is titled a stipulated bench trial, speaking with the defense counsel, at length last week in their efforts to preserve their right to appeal in speaking with their appellate division, if you'll – and he says if you'll correct me if I'm wrong here – it's not quite as stipulated as the term may sound. It's not stipulated at all, actually, and that's kind of where we're at at this point, Judge. However, they're not really contesting the facts. They're just trying to preserve, and then it goes on. What would have been the consequences if he had stipulated? That's – that is the debate, I suppose, in the unclear area of the law is whether if he had stipulated, it would have affected his ability to raise his suppression issue. But he can't – no one can stipulate unilaterally. The government has to agree to a stipulation. That's the nature of stipulations. I don't disagree. And nothing in that transcript suggests the government would agree. In fact, the government is sitting there listening, saying, yeah, we've got to go through this because he needs to preserve it. I think that's how the record reads. Okay. I don't disagree with your – All right. – reading through the record. Right, and that would be consistent. They're not going to say we'll accept a conditional plea and we're not going to do anything. We are not cooperating with you, Mr. Defendant. We all know you're trying to preserve your acceptance of responsibility. But then something goes wrong. At sentencing, in spite of the PSR saying he's remorseful, he's not challenging their proof, he just wants to say there wasn't reasonable suspicion to pull the car over, which is a legal determination for – So the judge at this hearing says – At the sentencing hearing, you mean? Actually, at the – Bench trial. Bench trial. It is evidence in a trial. This gentleman has a right to confront all the evidence, so you all are going to have to play it in court. The other thing is if I'm reading a transcript of the depositions or I'm looking at the video, even if it's outside of court, it's not an acceptance of responsibility. I think that's legal error. I mean right there he's saying if you all are putting me to the trouble of this, that's it. I don't think that's acceptance. But it's the government's actions that have forced this to occur. In this case, the judge is very clear at the sentencing hearing that she believed that the defendant did not accept responsibility, contested at the suppression hearing. Contested what? The law as to what factors amount to reasonable suspicion? Or Mr. Nehera contested the facts? Okay. What's your best quote from the suppression hearing? What's the best impeachment effort that disputed the government's account? There was a whole series of… What's your best one? What is the best question that Nehera's attorney asked? Mr. Wardlaw, is that his name? That was. What's the question that you think is disputing the account the government's offer? I'm paraphrasing here. Okay. But I believe that it is something to the effect of the length of time between when and if he activated his lights and whether he evaded pulling forward. Okay. And that's what you said in the brief. But those facts are irrelevant. He can contest those because you would have to have reasonable suspicion before you activate. The stop is the activation. So whatever he says about the other, he is not contesting the facts pertinent to the legal decision he wants to appeal. Well, basically he's bringing out inconsistencies between what he believes happened and the report and his questioning, and that's the section that I think demonstrates what the judge is talking about. Huh. Rule that says you can never get acceptance of responsibility even if you go to trial. Right. It is within the discretion of the judge. But discretion can be abused. It can. And the standard is whether it is without foundation. And this is a deferential standard of review that is more deferential than the clearly erroneous standard as articulated by this court. But ultimately, I mean, it's almost a question of fact of whether one accepts responsibility because the judge is there and acceptance of responsibility is determined by a series of facts when it leads to a conclusion that this man actually has accepted responsibility for the crime he has committed. That's very true. It is a uniquely… Mixed question of fact and law. That is uniquely vested with the district court who is there, who evaluates the statements, the conduct, the demeanor, the entire proceeding before the judge in making that determination. And the judge expressly says… And two judges can make different determinations and they would both be accepted. As long as it was not without foundation. The trouble is the rule going forward. And let me read for you Garcia-Ruiz. Garcia-Ruiz appeals the denial of his motion to express. We need not decide whether the court erred, however, because even if the district court erred, the error is harmless by the fact Garcia stipulated to facts that established his conviction. So it sounds like if they try to do everything, they stipulate, they admit to the guilt, to preserve the argument before, we'll just say, well, it's harmless whether the district court made a mistake because you've now admitted the crime anyway. So you have to give me – I really want some way out of that box legally instead of focusing on the facts of this case. How do we harmonize Washington with Garcia-Ruiz so that people can get the guideline credit? My analysis of Rule 11 is that a defendant can, by pleading guilty, waive all pretrial. So that's very clear. So the question then becomes whether either through a stipulated bench trial the defendant could acknowledge the evidence against him and still protect his ability to raise an issue on appeal. I read the rule that way. I'm not so sure of the analysis in the case – I'm not so sure that I would necessarily agree with the analysis. But that's a published decision of ours. But it references an unpublished decision, and I'm not entirely sure about how that – because in my experience, defendants have basically an option. They can plead guilty, accept responsibility, and go on their way. If they want to preserve an issue, they have two options. They can go to trial. They can have a bench trial. And so to the extent that a trial clearly preserves their right to challenge the denial of the motion to suppress – right? Well, no one is denying they have a right to challenge. Our court is saying it will just be harmless because now, conveniently, you've said you're guilty. So we don't read and need anything more than the defendant's sworn statement. Because I'm thinking through this and just having a conversation. If you go to trial and you cross-examine witnesses, it would seem to me that you're not stipulating, and yet you get to preserve your right to challenge. You do. But that's what he did here. All he did was cross-examine. And so the issue is – I view it as somewhat distinct from the two issues raised in this case, which is, number one, he didn't challenge the motion to suppress. He didn't challenge the motion, but he tried to, and you said we don't agree. No, I'm saying on appeal. That issue is not even before this court. There are only two issues before the court, the denial of acceptance of responsibility and whether an adjustment under the guidelines for recklessly causing serious risk of injury. And so I'm not even sure that this case presents the issue because in this case the defendant has not challenged the denial of his motion to suppress on appeal. Is that – that's not in your brief? No. This is – yeah. We had none of the discussion about the effects of Rule 11 and how the interplay between a bench trial, stipulated or otherwise, was really briefed before. He couldn't have anticipated there might be guideline errors when the difficulty is occurring. Obviously, the sentence has not been imposed at that point. That's correct. You were going to make two points. One was that one. Didn't you have a second intriguing – were regarding all of that are really not part of the issue in this case. The issue in this case is whether he should receive an adjustment for acceptance of responsibility. And my reading of the record and the comments of the judge is that that is not without foundation, that there is a foundation for denial of acceptance. And you're pointing us especially to the cross-examination of ward law at the pretrial hearing. And the fact that the judge had to sit through a contested bench trial, which is clear. The judge makes comments regarding both. When you say contested, what did they contest? They did not acknowledge the evidence against them. They didn't dispute it either, and they required for the presentation of evidence, and then the judge made a finding of that. I'm not saying it was a vigorous bench trial. But the judge found that it was contested, and it starts off with a hearing that it's actually not stipulated. It starts off that way, and it's pretty clear from the get-go that the decision was made that they weren't going to acknowledge the evidence against them. Do you want to get to the other point? Sure. In this case, Appellant's suggestion that because the aliens didn't drown, that somehow they get a pass for leading them into dangerously deep water. What is the evidence in that that supports that endangerment? The evidence is that the guide led them into a very deep section of the river, and they almost drowned. What does that mean, though? I mean did he leave them? How many was there? Was it just one? There was a group, I believe, three or four. One of the aliens had an altercation with the guide over the fact that they almost drowned and then broke away from the group, ostensibly based on the guide's inexperience. I thought that was a little point in the brief that I lost you on. I thought the characterization by the government was, oh, that guy left because he was so frightened of drowning. But I thought when you get back into the record, he left because they saw an official coming towards them. I think it may be a little bit unclear, and that may be a fair inference. In my view, one individual broke off from the group. A second individual was called, led the group to a different part of the river where they were able to cross without incident. And so the judge found, and I don't believe it was an abuse of discretion based on this record, that leading aliens into a deep section of the river that could have resulted, and the testimony was, at least from their subjective belief, was that they almost drowned. And he had to get help to find a different spot in the river. Does the record show whether any of them actually crossed the river on that occasion? They all crossed the river. On that occasion in which they were exposed to drowning. They backed away and then found a different section of the river. Okay, so none of them actually crossed in the deep section. That's correct, Your Honor. They could not make it because they were about to drown. I think that's the way the aliens' testimony was. But we don't know what that meant. I mean, in other words, they were about to drown. Did they still have their feet on the floor of the river and turned around and walked back? I mean, how were they endangered? I mean, did he force them to do it? Once they said, this is too deep, and they started walking back, he said, well, we'll find another place to cross. The aliens, of course, are entrusted with a guide. They pay money to be smuggled across the river, and they rely on— They want their money back, is that what you— And they rely on the skill and expertise, and in this case, they were subjected to, and I think the district court correctly found, a substantial risk that— I see I've used almost all my time. I mean, I can understand. I mean, if he forced them, said, well, I don't care, keep going, keep going, but he didn't say that. Just the opposite happened. They came back. I found them. Thank you, Mr. Gay. You will have some time on the button. Mr. Bogan. Judge, do you want me to respond to your question about the mixed fact and law nature of the acceptance of responsibility determination? I'll just point to what is in the record on that exact point. In the pre-sentence report, there's no direct quotation from Najera to the probation officer. Najera sat down with an interview, and what the pre-sentence report says is that the defendant stated he was arrested for conspiracy to transport immigrants for gain. He regrets every moment of it. Every day he is incarcerated, he is away from his family. He is very remorseful and apologizes to the court, but especially to his family and brother. But is he remorseful because he got caught or because he committed the crime? Isn't that the question? Yes, it is, but that's what we have in the record. But the district court did not find that he did not accept responsibility. The reason the district court denied acceptance of responsibility was this. The court said, there is no per se rule referring to, there's no per se rule that you can't get acceptance if you litigate a motion to suppress. And the court said, I have granted acceptance of responsibility in cases where there have been motions to suppress. And this is from the sentencing transcript at page 274 of the record. However, when you have a vigorous situation where you're contesting the very facts of the case, that's not accepting responsibility. Again, if this had just been a stipulated bench trial, we wouldn't be having this conversation because he stipulated it. I remember not being happy of not getting that conditional plea. There wasn't any reason not to get a conditional plea in this particular case, but that's y'all's decision to make. This is strictly based on just the motion to suppress. The court will overrule the objection. So the court said it's because of the motion to suppress and seemed to suggest that if there had been a conditional plea, they wouldn't be here in this dispute over acceptance of responsibility. Was there any indication, the basis for stopping him? What was the basis of the suspicion for stopping him? It was a number of factors. One, that the road that they were on is not used very often except by ranchers, other people who are local to the area, and smugglers. The agent did not recognize the vehicle that Nehara was driving, unlike some other vehicles that Nehara had seen earlier that morning. That when Nehara and the agent passed each other going in opposite directions on the road, Nehara didn't look at the agent and had a tight grip on the steering wheel. The agent demonstrated that at the suppression hearing, and he turned around, followed the vehicle. The agent said that he had a hard time catching up to Nehara, that apparently he sped up, and so it took a while for the agent to catch up to him. When the agent did, he could see that the SUV was sagging in the back, and he testified that based on his experience… Was this a dirt road or a paved road? No, it's a paved road that leads from Brackettville to Highway 377. It runs more or less due north and south, and so that was the basis. Wouldn't you agree with me that in order to solve the predicament you're in, the best course of action is for a defendant to say at the beginning of the bench trial, I want to confess, I want to stipulate, get a clean record where the government says we won't accept the stipulation, just as we wouldn't accept the conditional plea. Then it comes up to us and we'll have to work through the implications of Garcia Ruiz, which is binding on us. That would be a way of getting that question. But your client didn't confess, and he didn't clarify at the beginning of the bench trial he would stipulate if the government would, right? Or do you disagree? Well, what defense counsel said at the beginning of the bench trial, after the government said it's not exactly a stipulated situation, defense counsel says we wanted to do a conditional plea. If the government's positioned that they don't offer it, but that would be the only way I think that we could easily, and then there was further exchange between the court and defense counsel. And so ultimately the court says, well, the bottom line is, from what I understand, it's not really stipulated as to the facts then. And so it would be a cleaner record, and the court would probably have to squarely confront whether Garcia Ruiz is correct, whether that was a holding or dicta. A defendant is going to be very hesitant to do that, though, because there's no way to know how that's going to come out. And that's why this transpired the way that it did. Because of this uncertainty and because acceptance hinges on very fine, I'd say arcane distinctions about what a defendant did and did not contest at some point in the proceedings. Okay. Thank you. Thank you, sir.